# United States Court of Appeals
## For the First Circuit

No. 03-1806

MARGARITA RIVERA CASTILLO, CARLOS T. RAVELO GUERRERO,
AND CONJUGAL PARTNERSHIP RAVELO-RIVERA

Plaintiffs, Appellees,

v.

AUTOKIREY, INC. D/B/A AUTOCENTRO TOYOTA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, <u>U.S. District Judge</u>]

Before

Torruella, <u>Circuit Judge</u>,
Coffin, <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

Aníbal Lugo Miranda, with whom Lugo Miranda Law Offices was on brief, for appellant.

Rafael A. Oliveras López de Victoria, with whom Edificio Asociación de Maestros was on brief, for appellees.

August 11, 2004

**LIPEZ, Circuit Judge.** This appeal challenges a jury verdict against an auto dealer for violations of the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §§ 32701-711 (1994 & Supp. 1 2001) (the "Odometer Act") and Puerto Rico's General Tort Statute, 31 P.R. Laws Ann. § 5141 ("Article 1802"). The defendant, Autocentro Toyota ("Autocentro"), asks us to vacate the jury verdict in favor of the two plaintiffs (wife and husband when they bought the car in question) and enter a judgment in its favor. In the alternative, Autocentro seeks either a new trial or an adjustment of the damages awarded by the jury.

These claims for relief might have more force if defendant had protected itself with the required motions and objections at trial. For the most part, though, it did not. However, we do find that the damages award to plaintiff Margarita Rivera Castillo ("Rivera") is not supported by the record. Therefore, we must vacate Rivera's damages award and remand to the district court for a determination of the appropriate award on remittitur (or for a new trial if Rivera declines to accept the remitted amount). We leave the award to Carlos Ravelo Guerrero ("Ravelo") undisturbed on appeal.

## I.

The plaintiffs purchased a Toyota Tercel from Autocentro in October 1999 for $13,000 (or, when the cost of financing was considered, $18,789). Apparently, the defendant disclosed to

plaintiffs that the car had been previously titled, though not to whom. However, Autocentro also represented to plaintiffs that the car had never been used. Indeed, when plaintiffs purchased the car, the odometer registered less than ten miles.

According to plaintiffs, the car developed various rattles and mechanical problems soon after they purchased it. Suspicious that their newly purchased car might not be so new, plaintiffs investigated the car's title history. That investigation revealed that the Tercel was imported by the distributor Toyota de Puerto Rico, then "consigned, delivered, and/or sold" to Autocentro Toyota, the defendant, who then sold the car to Cabrera Car Rental.[1] Eventually, Cabrera Car Rental sold the car back to Autocentro. Having determined that the prior owner was a car rental agency, plaintiffs' suspicions were heightened, and they retained a master mechanic to inspect the car. The mechanic concluded that the car's odometer might have been altered.

Plaintiffs filed suit in federal court, alleging violations of both Article 1802 of the law of Puerto Rico, which states in pertinent part that "[a] person who by an act or omission causes damage to another through fault or negligence shall be

---

[1]Under Toyota's distributor and dealership agreements, a dealer such as Autocentro acts as an intermediary for and receives a commission on distributor sales to fleet clients such as rental car agencies.

obliged to repair the damage so done," 31 P.R. Laws Ann. § 5141,[2] and the federal Odometer Act, which states <u>inter alia</u> that "[a] person may not . . . disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703(2). In considering the Odometer Act, originally passed in 1972, Congress found that although seventeen states at the time had enacted legislation to prohibit altering odometers,

> States without such legislation have found this practice on the increase, especially when a neighboring State has an odometer law. Odometers are turned back in States without odometer laws and then cars are marketed at inflated values in States with such laws. Thus, State odometer laws are easily circumvented and people in a State with such a law suffer because of this practice.

S. Rep. No. 92-413 (1971), <u>reprinted in</u> 1972 U.S.C.C.A.N. 3960, 3962. On this background, Congress found that federal action on

---

[2]Neither party devotes any argumentation to the Article 1802 claim on appeal. Briefly, to state an Article 1802 claim for damages based on negligence, "a plaintiff must prove that (1) defendant owed a duty to prevent the harm by conforming to a reasonable standard of conduct; (2) defendant breached that duty through a negligent act or omission; and (3) the negligent act or omission caused the plaintiff's harm." <u>Tokio Marine & Fire Ins. Co.</u> v. <u>Grove Mfg. Co.</u>, 958 F.2d 1169, 1171 (1st Cir. 1992). We focus on the Odometer Act, as do the parties, and the availability of damages under Article 1802 does not alter our analysis of the issues on appeal. Furthermore, as the district court noted, Autocentro "did not elicit evidence from Plaintiffs nor present independent evidence that would have allowed for a better allocation of those damages that were properly attributable to the Odometer Act and those that were attributable to the state law fraud action."

the issue was desirable and passed the Odometer Act to "establish a national policy against odometer tampering and prevent consumers from being victimized by such abuses." Id.

After plaintiffs filed their Odometer Act and Article 1802 claims in federal court, and pre-trial motion practice and discovery were completed, the case was tried before a jury for three days. According to the testimony of plaintiffs' witness Kenneth Cabrera, president and owner of the eponymous car rental concern, the car sat on the lot unrented for approximately two and a half months, and it was driven only once to be filled up with gasoline. Because demand for rental cars was low, Cabrera resold the car to Autocentro, returning physical custody of the car in mid-July. In an apparent surprise to all the parties, Cabrera also testified that the publicly registered invoice from his company to Autocentro was forged in December 1999, two months after plaintiffs bought the car, though it was not clear whether Autocentro, Toyota Credit de Puerto Rico, or some other entity was responsible for the forgery. In any event, Cabrera did not dispute that he resold the car to Autocentro, returned possession of the car to Autocentro in mid-July, and was paid the agreed upon price.

For approximately three months, from mid-July until plaintiffs purchased the car in October, Autocentro had the Tercel in its possession. While it was not uncommon for some cars to remain on the sale lot for that period of time or even longer, the

evidence indicated that Toyota Tercels were among the most popular and quick-selling cars in Puerto Rico -- in fact, the best-selling car on defendant's lot. Therefore, it was somewhat unusual, or, in the eyes of plaintiffs, highly suspect, that an available Tercel would remain unsold and unused for that length of time.

Plaintiffs also offered the testimony of a master mechanic, José Maldonado, regarding the alleged odometer tampering. The parties disagree as to the precise nature of Maldonado's testimony and his antecedent knowledge of the car's repair history prior to his inspection. Although he could not say that the odometer definitely had been altered, Maldonado did testify that it was his opinion that the car had been sold with an altered odometer, based on (1) the condition of the nuts and bolts in the transmission and odometer area, (2) the car having been purchased with less than ten miles on the odometer, (3) the car appearing to have "a lot more mileage" on it than was registered on the odometer at the time of the inspection, and (4) his understanding that the area of the car around the transmission and odometer had not previously been repaired.

Finally, plaintiffs called an expert witness to testify regarding plaintiffs' economic losses caused by the problems with the car. According to the expert witness, who based his conclusions on information provided by Ravelo, the damages were as follows: $145 for repairs that would not have been incurred if the

car was new; $4,532 that plaintiffs paid in excess of the actual value of the car; $1,000 in job-related taxi fares Ravelo incurred because of the unavailability of the car; $14,400 in lost income because Ravelo, a freelance court interpreter who charged $60 per hour, lost 240 working hours due to this case and a related administrative complaint; and $156 in simple interest at 6%.

Other than to elicit testimony that the expert based his calculations on numbers provided by plaintiffs, Autocentro did not counter the expert's testimony regarding damages. Also, defendant did not introduce a mechanic of its own to testify that the odometer had not been altered. Autocentro put on two witnesses who were employed by Autocentro during the relevant time period: Richard Lee San, the finance manager who sold plaintiffs the car, and José Roberto Ramirez Suriel, the general manager. Lee testified about the details surrounding plaintiffs' purchase of the car, including detailed testimony about the documents that were part of the transaction. Additionally, he testified that he informed plaintiffs that the car previously had been registered to a company, which he did not identify to plaintiffs, and that the company had not used the car and "had been compelled to sell it again." Ramirez testified about the business relationship between Cabrera Car Rental and Autocentro, the history of their dealings related to the plaintiffs' Tercel, and the inspection procedures

Autocentro uses upon receipt of a car into inventory. Ramirez also testified that Autocentro did not alter the odometer of the car.

After the close of evidence, the jury returned a unanimous verdict for plaintiffs under the Odometer Act and Article 1802. The jury awarded Rivera and Ravelo $20,000 each in damages.[3] According to the jury verdict form, the jury found that Autocentro "intentionally defrauded plaintiffs regarding the reading of the odometer in the Toyota Tercel." As a result, the district court trebled the award pursuant to 42 U.S.C. § 32710(a), which provides that "[a] person that violates this [Act], with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater." After the district court entered judgment for plaintiffs, the defendant filed a post-trial motion for judgment as a matter of law and a motion for new trial or remittitur, both of which were denied. Defendant now appeals from the jury verdict, the award of damages, and the district court's denial of defendant's post-trial motions for relief.

## II.

Autocentro advances three claims of error on appeal. First, it argues that the district court erred in declining to

---

[3]The trial transcript indicates that the jury awarded plaintiff Rivera $21,000 and plaintiff Ravelo $20,000. However, the district court entered judgment in the amount of $20,000 each, which was trebled to total $120,000, plus costs. No party addresses this apparent discrepancy on appeal; we treat the district court's entry as the figure at issue.

-8-

grant defendant's post-trial motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50. Second, Autocentro claims that the district court's instructions to the jury regarding damages were flawed. Third, defendant urges that the district court erred in failing to grant its motion for a new trial or remittitur under Federal Rule of Civil Procedure 59. As we shall explain, only the latter claim is meritorious, and only then with respect to the award to plaintiff Rivera.

## A. Motion for Judgment as a Matter of Law

Defendant argues that evidence submitted at trial was insufficient to allow a reasonable jury to conclude that Autocentro violated the Odometer Act when it sold plaintiffs the car in question. Even in the best of circumstances, the standards for granting a motion for judgment as a matter of law are stringent. Courts may only grant a judgment contravening a jury's determination when "the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 759-60 (1st Cir. 1994). In making that determination, courts must consider the evidence and its attendant inferences in the light most favorable to the non-moving party. Id. at 760. However, we do not even reach the application of this stringent standard here because defendant

failed to preserve the sufficiency of the evidence issue for appeal.

Federal Rule of Civil Procedure 50 provides that "[m]otions for judgment as a matter of law may be made at any time before submission of the case to the jury." Fed. R. Civ. P. 50(a)(2). This case was submitted to the jury on February 24, 2003, judgment was entered on February 26, and Autocentro moved for judgment as a matter of law for the first time on March 10. Simply put, defendant's failure to move for judgment as a matter of law at the close of evidence procedurally defaults this claim on appeal. See, e.g., Keisling, 19 F.3d at 758 (holding that even when a defendant moves under Rule 50 at the close of plaintiff's evidence -- and Autocentro did not even do that -- "[i]f a defendant wishes to renew a motion for judgment as a matter of law at the post-trial stage, with a view to having denial of that motion considered by the court of appeals, the defendant is required to have moved for judgment as a matter of law at the close of all the evidence"). As we observed in Keisling: "[r]equiring the motion to be made at the close of all the evidence gives the opposing party an opportunity to respond to any evidentiary deficiencies noted by the motion by seeking to reopen the evidence prior to submission of the case to the jury." Id. at 758-59. A party's failure to move under Rule 50 at the close of all evidence "cannot be taken lightly . . . ." Jusino v. Zayas, 875 F.2d 986, 991 (1st Cir. 1989). We have

-10-

consistently held that we "will not consider claims of insufficient evidence unless the district court was presented with a motion for judgment as a matter of law at the close of all the evidence." Keisling, 19 F.3d at 759; see also Jusino, 875 F.2d at 991 (collecting cases dating from 1954).

Defendant suggests no reason that our well settled rule should not apply in this case, and we see none in the record. Accordingly, we leave undisturbed the district court's denial of Autocentro's post-trial motion for judgment as a matter of law.

## B.  Jury Instructions

Autocentro alleges that the district court's instructions to the jury regarding damages were erroneous.  Defendant again suffers a self-inflicted wound on appeal because, in addition to failing to submit proposed instructions at the district court's invitation as provided for in Rule 51(a), it failed to object to the jury instructions at trial.  Federal Rule of Civil Procedure 51 provides that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection."  Fed. R. Civ. P. 51(c)(1).  The "failure to object to the [jury] instructions at the time, and in the manner, designated by Rule 51 is treated as a procedural default . . . ."  Moore v. Murphy, 47 F.3d 8, 11 (1st Cir. 1995).  "Silence after instructions ordinarily constitutes a forfeiture of any objections . . . ."

Muñiz v. Rovira, 373 F.3d 1, 6 (1st Cir. 2004).  Again, as with the need to preserve an issue under Rule 50, we have "consistently held that the strictures of Rule 51 must be followed without deviation." Smith v. Mass. Inst. of Tech., 887 F.2d 1106, 1109 (1st Cir. 1989).

When a party fails to object to the jury instructions below, as Autocentro failed to do here, we review the claim on appeal only for plain error.  Muñiz, 373 F.3d at 7.  The well established plain error standard requires Autocentro to show "(1) an error was committed; (2) the error was 'plain' (i.e. obvious and clear under current law); (3) the error was prejudicial (i.e. affected substantial rights); and (4) review is needed to prevent a miscarriage of justice."  Smith v. Kmart Corp., 177 F.3d 19, 26 (1st Cir. 1999).  We have also formulated the fourth prong as requiring a showing that the error "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Muñiz, 373 F.3d at 6 (citing United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)); see also Kmart Corp., 177 F.3d at 26 (explaining that to merit reversal under plain error review, "the error must have resulted in a miscarriage of justice or seriously affected the fairness, integrity or public reputation of the judicial proceedings") (internal quotations and citations omitted); Scarfo v. Cabletron Sys., Inc., 54 F.3d 931, 940 (1st Cir. 1995) (noting that Fed. R. Civ. P. 51 "has been rigorously enforced in this circuit, and its clear language will be overlooked only in

-12-

exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice, where the error seriously affected the fairness, integrity or public reputation of judicial proceedings") (internal quotations and citations omitted). We have commented before that "[p]lain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault . . . ." Kmart Corp., 177 F.3d at 26 (internal quotations and citations omitted).

> Here, the district court instructed the jury that

> > plaintiffs are suing for actual damages, on account of certain alleged representations made by [defendant] to plaintiffs . . . . Any damages that you may award in this case, or any other case, must be based upon evidence in the case and on your dispassionate analysis of the extent of any injuries sustained by plaintiff as a result of the defendant's wrong, if any. You are not permitted to award damages on the basis of passion, prejudice, or improper sympathy for or against any of the parties in this case. . . .

> > In determining any damages recoverable by the plaintiffs, you can consider the following items: Any emotional pain and mental anguish, if proven; any economic damages, if proven. Damages may be reasonable, as I said before. They have to be based solely upon the evidence and cannot be rendered as punishment. They cannot be speculative. They can only be assessed to compensate for actually sustained losses and nothing else.

In its brief, Autocentro claims that this instruction was in error because

> > [t]he jury was never given the definition of "actual damages" or of the calculation of

-13-

damages as provided by the [Odometer Act]. Because of the fact that the jury was never instructed on the definition of actual damages and on the fact that only actual damages would be trebled as required by Law, Autocentro moves the Court to not treble the award, since clearly the jury intended Ravelo and Rivera to receive compensatory damages, and under the Federal Odometer Act these are not trebled.

Defendant apparently is unaware that the definitions of "actual damages," which are trebled under the Odometer Act, and "compensatory damages," which it claims the jury intended to award, are synonymous. Black's Law Dictionary 394 (7th ed. 1999) (defining "actual damages" and noting that they are "[a]lso termed 'compensatory damages'"). To the extent that defendant relies on this misapprehended distinction to support its claim of error, the claim is baseless.

Autocentro further claims that we "should consider that not informing the jury that the award would be triplicated poses a due process problem, since Autocentro was not afforded the Constitutional guarantees as to the portion of the award corresponding to the triplication." Leaving aside that defendant offers this broad assertion with no supporting legal citation, we find this claim wholly unpersuasive for another reason: when discussing the district court's proposed verdict form, defense counsel specifically stated that he did not think the issue of treble damages should be addressed to the jury. Since the defendant requested that the availability of treble damages not be

-14-

addressed to the jury, and the district court honored that request, the defendant cannot argue on appeal that the district court's approach constitutes reversible error.

More troubling is defendant's claim that under the Odometer Act, the measure of "actual damages" should be limited to the difference in the amount paid by plaintiffs and the amount the car was actually worth given its true condition, along with repair costs that plaintiffs would not have incurred had the car's true mileage matched that shown on the odometer. Defendant cites scattered district court cases to support this theory of limited damages, and this approach has some intuitive appeal. Unfortunately, the term "actual damages" is not defined in the statute, nor could we find any relevant legislative history clarifying the point. However, as one district court observed: "The method of calculating damages favored by the courts is to utilize the difference between the fair market value of the car with the actual mileage thereon, and the amount paid for the automobile by the purchaser, plus any other damages that the purchaser may have incurred." Williams v. Toyota of Jefferson, Inc., 655 F. Supp. 1081, 1085 (E.D. La. 1987) (collecting cases). We found only one case that addressed the availability of lost wages, and there the district court "excluded testimony which the plaintiff offered at trial to establish the value of lost wages, on the grounds that such damages are too remote to be recoverable

-15-

under the [Odometer] Act." Jones v. Fenton Ford, Inc., 427 F. Supp. 1328, 1332 n.8 (D. Conn. 1977). Another court has held that in the absence of a statutory definition of actual damages, "it seems reasonable to give it the meaning commonly applied to fraud cases." Duval v. Midwest Auto City, Inc., 425 F. Supp. 1381, 1388 (D. Neb. 1977), aff'd, 578 F.2d 721 (8th Cir. 1978). In turn, the Restatement (Second) of Torts § 549 (1977) explains that in fraud cases,

> [t]he recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation.

Id. § 549(1).

This last approach -- applying the definitions of damages derived from fraud cases -- would result in the availability of pecuniary damages, presumably including lost wages if a proper showing of causation could be made, but likely exclude recovery for such nonpecuniary damages as emotional pain and mental anguish. See Steven J. Gaynor, Annotation, "Fraud Actions: Right to Recover for Mental or Emotional Distress," 11 A.L.R.5th 88 (2004) ("Damages in an action for fraud are generally limited to actual pecuniary

-16-

loss; however, this rule is not without exceptions.") (collecting and analyzing cases).

We acknowledge, then, that in a case where the issue was properly raised, a substantial argument could be made that violations of the Odometer Act should be treated as a species of fraud, and the actual damages recoverable should be limited to pecuniary damages, which might include lost wages. However, as we have emphasized, defendant's procedural lapses with respect to the jury instructions require us to apply plain error review. Even if the inclusion of "emotional pain and mental anguish" in the jury instructions on damages constituted error (an issue we do not decide), the error would not be plain because of the absence of a statutory definition of actual damages, the lack of legislative history, and the inconclusive nature of the available precedents.

Morever, the district court's instructions did not result in a miscarriage of justice or affect the fairness, integrity, or public reputation of the proceedings below. Defendant did not propose jury instructions. It did not object to the instructions given by the district court. It did not afford the district court a timely opportunity to rule on the issues it now raises on appeal. Its one request – that the issue of treble damages not be addressed to the jury – was honored. Under the circumstances, we think our words from over a decade ago apply with force in the present case:

> The plain error standard . . . is near its zenith in the Rule 51 milieu. . . . It strains credulity well past the breaking point to argue that the defendants' self-created plight can fit within so exclusive a classification.
>
> Moreover, to employ the plain error exception in this situation would sow the seeds for a mischievous harvest and would be fundamentally unfair to both the plaintiff and the district court. Rules serve a valuable purpose. Without them, the judicial system would be in shambles. It follows that, in the ordinary case, parties flout well-established rules at their peril.

Toscano v. Chandris, S.A., 934 F.2d 383, 385 (1st Cir. 1991). So it is here. We find no plain error in the district court's instructions that would entitle Autocentro to relief from the jury verdict on appeal.

### C. Motion for a New Trial or Remittitur

Finally, Autocentro claims that the district court erred in declining to grant its motion for new trial or remittitur under Federal Rule of Civil Procedure 59. Rule 59 provides in relevant part that "[a] new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). We have stated that a district court may exercise its discretion to grant a Rule 59 motion if "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise

-18-

questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." Cigna Fire Underwriters Co. v. MacDonald & Johnson, Inc., 86 F.3d 1260, 1262-63 (1st Cir. 1996) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)). District courts "may set aside a jury's verdict and order a new trial only if the verdict is so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice." Federico v. Order of Saint Benedict in Rhode Island, 64 F.3d 1, 5 (1st Cir. 1995).

We review denials of motions for a new trial or remittitur for abuse of discretion by the district court. See, e.g., Trull v. Volkswagen of America, Inc., 320 F.3d 1, 8, 9 (1st Cir. 2002). On appeal, we will find that a district court abused its discretion only if the jury verdict exceeds "any rational appraisal or estimate of the damages that could be based on the evidence before the jury . . . ." Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988) (quoting Segal v. Gilbert Color Sys., Inc., 746 F.2d 78, 81 (1st Cir. 1984)).

1. The Damages Award to Ravelo

As to the $20,000 awarded to Ravelo, defendant's argument is unpersuasive. Plaintiffs introduced an expert witness who testified that Ravelo's economic damages were approximately $21,000. Ravelo also testified regarding the extent of damages he incurred. Defendant introduced no rebuttal witnesses regarding the

extent of plaintiffs' damages. To be sure, Ravelo's evidence was not overwhelming. In entering judgment for the plaintiffs, the district court observed that while the jury verdict "may contradict the bench's assessment of the evidence, viewing the facts in the light most favorable to Plaintiffs allows for a liberal jury interpretation of the matters at issue." As the district court rightly observed, courts are not entitled to substitute their view of the evidence for the verdict reached by the jury. Only when the verdict is a "manifest miscarriage of justice," Federico, 64 F.3d at 5, or the damages awarded are "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand," will courts intervene to upset a jury verdict and award. Segal, 746 F.2d at 80-81 (internal quotations and citations omitted).

Although we might characterize the award to Ravelo as generous, it is grounded in evidence adduced at trial and does not shock the conscience of the court. Therefore, we cannot conclude that the district court abused its discretion by refusing to disturb the jury verdict to Ravelo either by ordering a new trial or granting a remittitur of the damages.

### 2. The Damages Award to Rivera

The damages award to Rivera presents a different story. The only damages evidence was her testimony that she "felt very bad because I felt that I had been misled. I felt let down with the

whole situation. I felt like any human being who discovers that he has been misled by someone." Rivera also testified that after she came to believe that the car in fact had many more miles on it than represented by the odometer, she no longer felt safe driving the car. In addition to testifying that she was upset by the whole situation, Rivera testified that "this brought emotional conflicts between me and my husband [and] because of the stress that we had because of all of this, and he was angry and upset, and . . . he would fight a lot and argue a lot with the children." Finally, Rivera testified that "when things like this happen, you start mistrusting because of the fact that you see that they are trying to fool you, and many things go through your head. . . . I am still affected because mainly of having to go through this entire process."

Without diminishing the aggravation that the problems with the car caused Rivera, we are constrained to say that the record evidence simply does not support the $20,000 award.[4] Unlike the $20,000 award to Ravelo, which comports with the amount of his economic damages to which the expert witness testified, the $20,000 award to Rivera has no "rational basis in evidence." O'Brien v.

_____

[4]We are not suggesting that emotional pain and mental anguish are necessarily damages appropriately recovered under the Odometer Act. However, since those items were in the unobjected-to jury instructions, which we have held do not constitute plain error, they are the law of the case. Muñiz, 373 F.3d at 7 ("The defendant did not object to th[e] instruction and it is, therefore, the law of the case.").

<u>Papa Gino's of America, Inc.</u>, 780 F.2d 1067, 1076 (1st Cir. 1986). The only evidence to support Rivera's award is testimony that she felt "bad," "let down," "mistrusting," and that domestic life had added stresses. This level of bother, which in many ways describes the everyday frustrations all members of society suffer from time to time, does not remotely warrant $20,000 in relief, trebled to $60,000.

Having concluded that the damages award to Rivera is excessive as a matter of law, we have two options: remanding to the district court to determine damages, or setting the amount of remittitur ourselves based on the evidence adduced at trial. <u>Koster</u> v. <u>Trans World Airlines, Inc.</u>, 181 F.3d 24, 36 (1999). Fixing a dollar amount on a plaintiff's emotional distress is always an uncomfortable judicial undertaking: "[t]ransmitting legal damages into money damages is a matter 'peculiarly within a jury's ken,' especially in cases involving intangible, non-economic losses." <u>Torres</u> v. <u>Kmart Corp.</u>, 233 F. Supp. 2d 273, 282 (D.P.R. 2002) (quoting <u>Smith</u> v. <u>Kmart Corp.</u>, 177 F.3d 19, 30 (1st Cir. 1999)). Nevertheless, we have consistently held that when the jury award is not "within the universe of possible awards which are supported by the evidence," courts must provide relief, despite the lack of precision in determining nonpecuniary damages. <u>Clark</u> v. <u>Taylor</u>, 710 F.2d 4, 13 (1st Cir. 1983); <u>see also</u> <u>Marchant</u> v. <u>Dayton Tire & Rubber Co.</u>, 836 F.2d 695, 704 (1st Cir. 1988) (vacating

-22-

jury-awarded damages as excessive on appeal); <u>Laaperi</u> v. <u>Sears,</u> <u>Roebuck & Co.</u>, 787 F.2d 726, 734 (1st Cir. 1986) (same).

The task of remitting noneconomic damages is even more delicate when attempted from the cold appellate record.  We think that the district court's greater familiarity with the course of proceedings below, and particularly its ability to observe the witnesses' testimonies, afford a better position to assess the amount of damages appropriate on remittitur.  On remand, the district court will remit the jury award "to the maximum that would be upheld by the trial court as not excessive."  <u>Jones & Jones</u> v. <u>Pineda & Pineda</u>, 22 F.3d 391, 398 (1st Cir. 1994).  The damages award determined by the district court will be trebled under the Odometer Act because of the jury finding that Autocentro intentionally defrauded the plaintiffs.  Finally, as per the usual rule, Rivera will have the choice of accepting the remitted award or opting for new trial.  <u>See, e.g.,</u> <u>Liberty Mut. Ins. Co.</u> v. <u>Continental Cas. Co.</u>, 771 F.2d 579, 589 (1st Cir. 1985).  The district court has the option of ordering a full trial for Rivera or limiting the new trial to the issue of damages. Fed. R. Civ. P. 59(a) ("A new trial may be granted to all or any of the parties and on all or part of the issues . . . ."); <u>see also</u> <u>Marchant</u>, 836 F.2d at 704 (concluding "that a new trial on damages is appropriate").

**III.**

For the forgoing reasons, we affirm the judgment to Ravelo. We vacate the judgment to Rivera and direct the district court to enter a new judgment for Rivera in the amount that it determines is appropriate in light of the evidence, to then be trebled, or, if Rivera refuses to accept entry of such judgment, order a new trial for Rivera, which may but need not be limited to the issue of damages. We **REMAND** for proceedings consistent with this opinion. Each party shall bear its own costs.

**SO ORDERED.**