14-1249-cv
In re MF Global Holdings Ltd. Investment Litig. (Deangelis v. Corzine)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of May, two thousand fifteen.

PRESENT: DENNIS JACOBS,
         ROSEMARY S. POOLER,
         PETER W. HALL,
                      Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
IN RE MF GLOBAL HOLDINGS LTD. INVESTMENT
LITIGATION (DEANGELIS V. CORZINE)
- - - - - - - - - - - - - - - - - - - -X
BEARING FUND LP, AUGUSTUS
INTERNATIONAL MASTER FUND, LP, KAY P.
TEE, LLC, MARK KENNEDY, THOMAS G.
MORAN, ROBERT MARCIN, PARADIGM ASIA
LTD., PARADIGM EQUITIES LTD.,
PARADIGM GLOBAL FUND I LTD., PS
ENERGY GROUP, INC., SUMMIT TRUST
COMPANY, HENRY ROGERS VARNER, JR.,
THOMAS S. WACKER,
        Plaintiffs-Appellants,

        -v.-                                    14-1249-cv

1

**PRICEWATERHOUSECOOPERS LLP,**
    **Defendant-Appellee.**[*]
- - - - - - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANTS:**                    ANDREW J. ENTWISTLE (Merrill G. Davidoff, Berger & Montague, P.C., Philadelphia, Pennsylvania, Charles R. Eskridge III, Susman Godfrey LLP, Houston, Texas, <u>on the brief</u>), Entwistle & Cappucci LLP, New York, New York.

**FOR APPELLEE:**                    JAMES J. CAPRA, JR. (James P. Cusick & David M. Fine, <u>on the brief</u>), King & Spalding LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Marrero, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Plaintiffs--representatives of a class of former commodities customers of MF Global Inc. ("MFGI")--appeal from the judgment of the United States District Court for the Southern District of New York (Marrero, <u>J.</u>), dismissing their claims against PricewaterhouseCoopers LLP ("PwC"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

In 2010 and 2011, MFGI allegedly raided commodities customer accounts, which it maintained in its capacity as a futures commission merchant, in an effort to stave off collapse. <u>See generally</u> <u>In re MF Global Holdings Ltd. Sec. Litig. ("MF Global I")</u>, 982 F. Supp. 2d 277, 288-300 (S.D.N.Y. 2013) (describing collapse of MFGI). In so doing, MFGI violated the Commodity Exchange Act ("CEA") and regulations promulgated by the Commodity Futures Trading Commission ("CFTC"). <u>See</u> 7 U.S.C. § 6d(a)(2); 17 C.F.R.

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

§ 30.7(a).  Plaintiffs allege that PwC, which conducted audits of MFGI in 2010 and 2011 pursuant to 17 C.F.R. § 1.16, enabled MFGI's unlawful conduct by failing to detect deficiencies in MFGI's accounting and internal control procedures.  In re MF Global Holdings Ltd. Inv. Litig. ("MF Global II"), 998 F. Supp. 2d 157, 174 (S.D.N.Y. 2014).  Plaintiffs sued PwC for breach of fiduciary duty on behalf of MFGI and for professional negligence on behalf of MFGI and customers.[1]

The district court granted PwC's motion to dismiss, holding that: (1) the claims on behalf of MFGI were barred by in pari delicto and (2) the professional negligence claim on behalf of customers failed as a matter of law because PwC was not in privity or "near-privity" with customers.  MF Global II, 998 F. Supp. 2d at 187-91.  Plaintiffs appealed.

"We review a district court's grant of a motion to dismiss under Rule 12(b)(6) de novo."  Simmons v. Roundup Funding, LLC, 622 F.3d 93, 95 (2d Cir. 2010) (internal quotation marks omitted).  We affirm the district court for substantially the reasons set forth in its thorough and well-reasoned opinion.

**1. In Pari Delicto.**  Plaintiffs' claims on behalf of MFGI are barred by in pari delicto, an affirmative defense which "mandates that the courts will not intercede to resolve a dispute between two wrongdoers."  Kirschner v. KPMG LLP, 15 N.Y.3d 446, 464 (2010).  In "appropriate" cases, the defense may be applied at the pleading stage.  Id. at 459 n.3.

Plaintiffs allege that MFGI, acting through directors and officers who have also been sued (the "D&O Defendants"), violated the segregation requirements of Section 4d of the CEA, 7 U.S.C. § 6d(a)(2) ("Section 4d"), and 17 C.F.R. § 30.7(a) ("Regulation 30.7").  The allegation defeats the claim: a corporation that engages in malfeasance cannot sue outside accountants who negligently failed to detect or prevent that malfeasance.  Kirschner, 15 N.Y.3d at 463, 477.

---

[1]   The trustee appointed to oversee the liquidation of MFGI under the Securities Investor Protection Act assigned MFGI's claims to Plaintiffs.  MF Global II, 998 F. Supp. 2d at 168-69.

Plaintiffs attempt to avoid in pari delicto by arguing, first, that PwC performed a special regulatory function pursuant to 17 C.F.R. § 1.16. Relying on Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299 (1985), and Pinter v. Dahl, 486 U.S. 622 (1988), Plaintiffs assert that in pari delicto cannot be applied if its application would undermine a federal regulatory scheme. However, those cases addressed the federal common law of in pari delicto and discussed the circumstances under which that doctrine could be invoked to preclude federal claims. Bateman Eichler, 472 U.S. at 301; Pinter, 486 U.S. at 635. This case concerns the application of New York's doctrine of in pari delicto to New York claims. Absent federal preemption, the application of a state law defense to state law claims is governed exclusively by state law. See, e.g., Kirschner v. KPMG LLP, 590 F.3d 186, 194-95 (2d Cir. 2009) (certifying such questions to the New York Court of Appeals). Plaintiffs have identified no federal statute that preempts the New York law of in pari delicto.[2] Nor have they cited any New York authority that adopts the principle articulated in Bateman Eichler and Pinter.

Second, Plaintiffs argue that PwC's wrongful conduct was unrelated to MFGI's because the negligent audits were performed prior to MFGI's violations of Section 4d and Regulation 30.7. However, the gist of the claims against PwC is that PwC should have--but failed to--detect deficiencies in MFGI's accounting and internal control procedures, and that these deficiencies later enabled MFGI to misuse customer funds. See Compl. ¶¶ 374-375. MFGI's misuse of customer funds is thus sufficiently linked with PwC's auditing failures: but for MFGI's wrongful conduct, there would have been no violations of Section 4d or Regulation 30.7 for PwC to prevent. Plaintiffs assert that in pari delicto bars claims based on failures to detect wrongdoing, but not claims based on failures to prevent wrongdoing. The case law makes no such distinction. See Kirschner, 15 N.Y.3d at 464.

Finally, Plaintiffs argue that it is premature to apply in pari delicto because there has been no definitive ruling that MFGI engaged in wrongdoing. That argument is self-

---

[2] The CEA provides a federal cause of action, but that cause of action cannot be brought against an auditor like PwC. See 7 U.S.C. § 25(a)(1).

defeating: if MFGI is ultimately found to have complied with Section 4d and Regulation 30.7, any negligence by PwC will have caused no injury.

Plaintiffs argue that the application of in pari delicto must await the outcome of the claims against the D&O Defendants. We disagree. "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . . if the defense appears on the face of the complaint." Iowa Pub. Employees' Ret. Sys. v. MF Global, Ltd., 620 F.3d 137, 145 (2d Cir. 2010) (internal quotation marks omitted).

The district court properly dismissed the claims asserted on behalf of MFGI as barred by in pari delicto.[3]

**2. Professional Negligence.** Under New York law, an accountant cannot be sued for professional negligence by a party with whom it did not contract unless the relationship between the plaintiff and the accountant was "so close as to approach that of privity." Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 546 (1985) (citation and internal quotation marks omitted). "Near-privity" has the following elements: "1) the accountant must have been aware that the reports would be used for a particular purpose; 2) in furtherance of which a known party was intended to rely; and 3) some conduct by the accountant 'linking' him or her to that known party." Sec. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 73 (2d Cir. 2000) (citing Credit Alliance, 65 N.Y.2d at 551).

BDO Seidman controls this case. In that case, the customer-plaintiffs of a bankrupt broker-dealer were not "known parties"; although the accountant-defendant knew that the broker-dealer's customers would, as a class, rely on the audits, it did not know that the *particular plaintiffs* bringing the action would rely on its representations." BDO Seidman, 222 F.3d at 75. And the requisite "linking conduct" was absent because the accountant never directly communicated with customers. Id. at 75-76.

---

[3] Because we affirm on this basis, we need not consider whether the breach of fiduciary claim could have been dismissed on the additional ground that "[g]enerally, there is no fiduciary relationship between an accountant and his client." Friedman v. Anderson, 803 N.Y.S.2d 514, 516 (App. Div. 1st Dep't 2005).

Here, Plaintiffs do not allege that PwC knew the specific identities of the "*particular plaintiffs* bringing the action" or "even . . . the number of customers [MFGI] had at any one time." BDO Seidman, 222 F.3d at 75. Furthermore, as in BDO Seidman, there is no allegation that PwC engaged in any "linking conduct" with MFGI's customers: the audit reports it prepared were delivered to MFGI, not customers.[4]

The district court properly dismissed Plaintiffs' professional negligence claim on behalf of customers.

* * *

For the foregoing reasons, and finding no merit in Plaintiffs' other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[4] Relying on Dorking Genetics v. United States, 76 F.3d 1261 (2d Cir. 1996), and Kidd v. Havens, 577 N.Y.S.2d 989 (App. Div. 4th Dep't 1991), Plaintiffs argue that "linking conduct" does not always require direct communication between the accountant and the relying party. Neither case assists Plaintiffs. In Dorking Genetics, linking conduct was present because the defendant's report was allegedly "tailored to the plaintiffs' requirements." 76 F.3d at 1270. Here, PwC's reports were tailored to the requirements of the CFTC and other regulators. In Kidd, the buyer received and read the title company's report, even if he did not directly receive the report from the company. 577 N.Y.S.2d at 990. Here, there is no allegation that Plaintiffs even received or read PwC's audit reports.

6